FILED

# United States District Court

MAY 10 2007

__MIDDLE__ DISTRICT OF __ALABAMA__

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA

v.

KEVIN EARL JACKSON

CRIMINAL COMPLAINT

CASE NUMBER: 2:07mj51-CSC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __May 10, 2007__, in __Montgomery__ county and elsewhere within the __Middle__ District of __Alabama__ defendant(s) did, (Track Statutory Language of Offense)

**knowingly possess with intent to distribute
approximately 500 grams or more of cocaine,
a Schedule II Controlled Substance,**

in violation of Title __21__ United States Code, Section(s) __841(a)(1)__.

I further state that I am a(n) __ABI Agent assigned to the HIDTA Task Force__ and that this complaint is based
                                    Official Title
on the following facts:

SEE THE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

May 10, 2007                              at    Montgomery, Alabama
Date                                            City and State

Charles S. Coody, U.S. Magistrate Judge         _____
Name and Title of Judicial Officer              Signature of Judicial Officer

## AFFIDAVIT

Affiant, Robert Thornton, being first duly sworn, do hereby state and affirm that:

1. He is an Alabama State Trooper, assigned as an agent for the Alabama Bureau of Investigation Narcotics Operations Service, and detailed to the Major Investigation Team of the High Intensity Drug Trafficking Area Task Force (HIDTA), which are both located at the Investigative Operations Center in Montgomery, Alabama. Agent Thornton is cross-designated and federally deputized as an agent of the United States Drug Enforcement Administration (DEA), which empowers him with authority under Title 21, United States Code, to conduct investigations and make arrests of those suspected of involvement in illegal activity pertaining to violations of federal law. He has twenty-six years of law enforcement experience, in which, the past thirteen have been extensively directed in narcotics investigations. The facts and information in this affidavit are based on Agent Thornton's personal knowledge and the knowledge of other law enforcement officers.

2. On Thursday, 05/10/2007, at approximately 2:18 am, Trooper James Hendrix was on routine patrol running radar in the median on Interstate 85 near the 5 mile marker in Montgomery County, Alabama. Trooper Hendrix observed a silver Dodge Charger, bearing Florida license plate C562ZU, traveling southbound in excess of the posted speed limit of 60. Trooper Hendrix then entered the roadway traveling behind the vehicle. Once behind the vehicle, Trooper Hendrix observed the vehicle drift to the left crossing the center line. Trooper Hendrix conducted a registration check on the vehicle, which returned to Enterprise Leasing, Pensacola, Florida.

3. Trooper Hendrix activated the emergency equipment on the patrol vehicle, and initiated a traffic stop on the vehicle south of the Union Street exit. Upon approaching the vehicle, Trooper Hendrix asked the driver for his driver license and vehicle registration. The driver produced a Florida driver license, identifying the driver as KEVIN EARL JACKSON. JACKSON asked Trooper Hendrix the reason for the traffic stop. Trooper Hendrix advised JACKSON that his (JACKSON) vehicle was traveling 68 miles per hour in a 60 mile per hour speed zone.

4. While talking with JACKSON, Trooper Hendrix noticed that JACKSON looked down and avoided making eye contact with Trooper Hendrix. Trooper Hendrix also noticed JACKSON'S hand shaking whenever JACKSON would hand Trooper Hendrix a document. Trooper Hendrix noticed that JACKSON was extremely nervous and

while talking to Trooper Hendrix continued to avoid making eye contact and stuttered while speaking. Trooper Hendrix asked JACKSON where he was coming from. JACKSON advised he was coming from Georgia near Atlanta, where he dropped his cousin off.

5. Trooper Hendrix returned to the patrol vehicle to write JACKSON a warning for speeding and to also conduct a driver license and criminal history check on JACKSON. During this time, Trooper Jason Burch arrived on the scene for assistance. The check revealed that JACKSON'S driver license was current. However, the criminal history check revealed that in 1995 JACKSON was arrested for Possession of with Intent to Distribute (Cocaine). Trooper Burch reviewed the rental contract and noticed that the vehicle was overdue. The vehicle was rented by JACKSON on Wednesday, 05/02/2007, at approximately 12: 38 p.m., and was scheduled for return on Thursday, 05/03/2007, at 12:38 p.m.

6. Trooper Burch then asked JACKSON to exit the vehicle. When Trooper Burch asked JACKSON why the vehicle was overdue, JACKSON stated he knew the manager and made a phone call and got an extension. Trooper Hendrix asked JACKSON to sign the warning for speeding. While signing the warning, Trooper Burch asked JACKSON if he always stuttered. JACKSON stated, "No, I don't need anymore tickets". As Trooper Hendrix was handing JACKSON a copy of the warning and other documents, Trooper Burch asked JACKSON if there was anything illegal in the vehicle. JACKSON replied, "No". Trooper Burch then asked JACKSON if he (JACKSON) was responsible for everything in the vehicle. JACKSON stated, "Yes". Trooper Burch then asked JACKSON for permission to search the vehicle, JACKSON stated, "No". JACKSON then asked Trooper Burch why he wanted to search the vehicle. Trooper Burch advised JACKSON to verify your answers. Trooper Burch then asked again to search the vehicle, JACKSON again stated, "No".

7. At that time, Trooper Burch conducted a free air sniff around the perimeter of the vehicle utilizing his drug K-9 partner "Nero." Trooper Burch began at the front right bumper and worked counter clockwise around the vehicle. Once K-9 "Nero" reached the front driver's side door, K-9 "Nero" attempted to jump through a partially open window. K-9 "Nero" then sat on the driver's side door. This behavior is consistent with his training in the detection of the odor of narcotics. Trooper Burch informed JACKSON that K-9 "Nero" alerted to the presence of the odor of narcotics. JACKSON was then advised that he was being detained. JACKSON was then placed in the backseat of Trooper Burch's patrol vehicle. Trooper Burch then searched the area where K-9 "Nero" alerted and discovered a black

plastic bag which contained a "brick" of a white powder substance believed to be cocaine under the front driver's seat. At that time, the purported drug evidence was placed in an evidence bag and secured in the trunk of Trooper Burch patrol vehicle. The vehicle driven by JACKSON was impounded and towed by B&G Towing.

8. JACKSON and the drug evidence were transported to the HIDTA office and turned over to TFO Robert Thornton by Trooper Hendrix. At approximately 3:53 a.m., TFO THORNTON conducted a field test on a portion of the white powder substance. The field test produced a "positive" reaction for the presence of cocaine. The cocaine was weighed and revealed a weight of 1033.90 gross grams. The drug evidence was then marked and sealed as evidence, as witnessed by Trooper Hendrix. At approximately 5:10 a.m., JACKSON was advised of his rights by TFO Thornton. JACKSON stated he understood his rights, but declined to give a statement.

9. A preliminary check of JACKSON'S criminal history has revealed that in 1996, he was convicted of Possession with Intent to Distribute Cocaine, in the Northern District of Florida (Pensacola Division). On May 1, 1996, he was sentenced to 54 months in the federal penitentiary, to be followed by a five (5) year term of supervised release.

10. Based upon the statement of facts and circumstances set forth herein, I have probable cause to believe that on Thursday, 05/10/2007, in the Middle District of Alabama, KEVIN EARL JACKSON, committed a violation of Title 21, United States Code, Section 841(a)(1); that is, Possession with Intent to Distribute Cocaine, a Schedule II Controlled Substance, in an amount in excess of 500 grams.

_____
Robert Thornton, Affiant
Alabama Bureau of Investigation


Sworn to and subscribed before me this 10th day of May 2007.

_____
Charles S. Coody
Chief United States Magistrate Judge